**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MANUEL PALOMAREZ, III,

   Plaintiff,

  v.             2:25-cv-00621-MLG-KK

FRANK J. BISIGNANO, Commissioner
of the Social Security Administration,

   Defendant.

## <u>AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]</u>

Before the Court is Plaintiff Manuel Palomarez, III's Motion to Reverse or Remand Administrative Agency Decision, with Memorandum in Support (Doc. 11) ("Motion"), filed September 26, 2025. In his Motion, Plaintiff appeals the denial of his claim for Supplemental Security Income ("SSI") and asks the Court to remand this matter to the Social Security Administration ("SSA") for further proceedings.[2] (*Id.*) On November 19, 2025, Defendant Frank J. Bisignano, the Commissioner of the SSA, filed a response in opposition to the Motion, and on December 3, 2025, Plaintiff filed a reply in support of it. (Docs. 14, 15.) Having meticulously reviewed the entire record and the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I propose to find that Plaintiff's Motion is well taken. I therefore recommend that the Court GRANT the Motion, REVERSE the Commissioner's decision denying

---

[1] By an Order of Reference (Doc. 12) entered on October 15, 2025, United States District Judge Matthew L. Garcia referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

[2] In the alternative, Plaintiff asks the Court to remand this matter to the agency for an immediate award of benefits. (Doc. 11 at 9.) However, Plaintiff fails to present any argument that would justify such relief. (*See generally id.*; Doc. 15.)

benefits, and REMAND this matter to the Commissioner for further proceedings consistent with these Amended Proposed Findings and Recommended Disposition.

## I.  BACKGROUND

On October 29, 2021, Plaintiff protectively filed a claim for SSI alleging disability beginning on January 1, 2020, due to depression, schizophrenia, and type 2 diabetes. (AR 44, 72, 74, 115-16, 210-34, 262-69.[3]) The SSA denied Plaintiff's claim at the initial level on April 24, 2023, and at the reconsideration level on September 12, 2023. (AR 92-114.) Plaintiff then requested a hearing, which Administrative Law Judge ("ALJ") Karen Wiedemann held on June 10, 2024. (AR 22-23, 65-91, 136.) Plaintiff and Vocational Expert ("VE") Nicole King testified at the hearing. (AR 65-91.)

On August 9, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff has not been disabled under the relevant sections of the Social Security Act since his application date. (AR 44-58.) On May 5, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-4); *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff now asks the Court to reverse the ALJ's unfavorable decision and remand this matter to the SSA for further proceedings. (Docs. 1, 11.)

## II.  THE ALJ'S DECISION

The ALJ reviewed Plaintiff's claim for SSI pursuant to the SSA's five-step sequential evaluation process ("SEP").[4] (AR 45-46.) At step one, the ALJ found that Plaintiff has not engaged

---

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on August 27, 2025. (Doc. 10.)

[4] The five-step SEP requires the ALJ to determine whether:

    (1)  the claimant engaged in substantial gainful activity during the alleged period of disability;
    (2)  the claimant has a severe physical or mental impairment or combination of impairments that meets the duration requirement;
    (3)  any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
    (4)  the claimant can return to his past relevant work; and, if not,

in substantial gainful activity since his application date. (AR 46.) At step two, the ALJ found that Plaintiff has the severe medically determinable impairments of: (1) type 2 diabetes; (2) diabetic neuropathy with complications including a history of sepsis, lumbar abscess, and osteomyelitis; (3) schizoaffective disorder; (4) bipolar disorder; and, (5) substance abuse.[5] (AR 46.)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 47-50.) Assessing Plaintiff's mental impairments, the ALJ found that, considered singly or in combination, they do not meet or medically equal the criteria of listings 12.03 (schizophrenia spectrum and other psychotic disorders) or 12.04 (depressive, bipolar, and related disorders).[6] (AR 48.) In making this determination, the ALJ used the "paragraph B" criteria of the SSA's Psychiatric Review Technique ("PRT"), finding that Plaintiff has "moderate" limitations in all four broad areas of mental functioning, *i.e.*: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and, (4) adapting or managing oneself. (AR 48-49; *see also* AR 95-97, 107-08); 20 C.F.R. § 416.920a; 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E). The ALJ found that Plaintiff's mental impairments do not satisfy the paragraph B criteria

---

(5) the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. § 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

[5] The ALJ also found that Plaintiff has had the non-severe impairments of deep vein thrombosis and left knee abrasion with swelling. (AR 46-47.)

[6] In these Amended Proposed Findings and Recommended Disposition, I focus my analysis on Plaintiff's mental impairments because Plaintiff alleges no error in the agency's consideration of his physical impairments. (*See generally* Docs. 11, 15.)

of listings 12.03 or 12.04 because they have not caused at least two "marked" limitations or one "extreme" limitation.[7] (AR 48-50.) The ALJ also found that Plaintiff's mental impairments do not meet the listings' "paragraph C" criteria because there is no evidence in the record of "marginal adjustment." (AR 49; *see also* AR 96, 107); 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(G)(2).

Prior to step four of the SEP, the ALJ found that Plaintiff has the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ladders, ropes, or scaffolds. He is occasionally able to balance, stoop, kneel, crouch, and crawl. He is able to understand, remember, and carry out simple work. He is able to interact occasionally with coworkers and supervisors. His job should never include general public contact. He is able to concentrate, persist, and remain on task and pace for the performance of simple work. He is able to adapt to changes that are introduced on an occasional basis in the work setting.

(AR 50.)

In assessing Plaintiff's mental RFC, the ALJ discussed the prior administrative medical findings of state agency psychological consultants Meagan Parmley, Ph.D., and April Walton, M.D. (AR 54-55.) According to the ALJ, these consultants found that Plaintiff has "moderate limitations in all areas" of mental functioning but retains the "capacity to perform simple, routine tasks in a setting of limited public contact." (AR 54-55.) The ALJ concluded that Dr. Parmley's and Dr. Walton's findings were "persuasive" and

> well supported by the medical evidence … that showed abnormal findings on mental status examinations, including mood abnormalities, disturbed thought content with paranoia and hallucinations, reduced memory, reduced concentration and some normal findings in the same areas.

(AR 55.)

---

[7] The ALJ noted that the limitations identified in the paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the SEP. (AR 49.) The ALJ further noted that the mental RFC assessment used at steps four and five of the SEP "requires a more detailed assessment of the areas of mental functioning." (AR 49-50.)

Relying on this and other record evidence, the ALJ determined that Plaintiff has the RFC to perform a range of work at the light exertional level with accommodations for his moderate mental limitations. (AR 56.) In particular, the ALJ first found that a restriction to "simple work" would accommodate Plaintiff's moderately limited abilities to understand, remember, or apply information and to concentrate, persist, or maintain pace. (AR 56.) Next, the ALJ found that a restriction to occasional changes in the work setting would accommodate Plaintiff's moderately limited ability to adapt or manage himself. (AR 56.) Finally, the ALJ found that a restriction to occasional interaction with coworkers and supervisors, and no interaction with the public, would accommodate Plaintiff's moderately limited ability to interact with others. (AR 56.)

At step four, the ALJ found that Plaintiff can no longer perform his past relevant work as a fast-food worker. (AR 56-57.) However, at step five, the ALJ relied on the VE's testimony to conclude that, considering his age, education, work experience, and assessed RFC, Plaintiff retains the ability to perform other jobs that exist in significant numbers in the national economy, such as laundry classifier, housekeeper, and garment sorter. (AR 57-58.) The ALJ therefore concluded that Plaintiff has not been disabled since his October 29, 2021 application date. (AR 58.)

### III.  STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does

not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

The "failure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## IV.  DISCUSSION

In his Motion, Plaintiff asserts that the ALJ erred in assessing his RFC because she accepted Dr. Parmley's and Dr. Walton's prior administrative findings but failed to account for all of the

6

limitations they found Plaintiff to have. (Doc. 11 at 5; Doc. 15 at 3.) Specifically, Plaintiff argues that the ALJ failed to account for all of the consultants' findings of moderate limitations in the broad area of sustained concentration and persistence, most particularly in the ability to attend and concentrate for extended periods.[8] (Doc. 11 at 6; Doc. 15 at 2.) Defendant counters that the ALJ did account for all of Dr. Parmley's and Dr. Walton's findings in her RFC assessment because she restricted Plaintiff to simple work and because, per agency guidance, a typical workday involves breaks about every two hours.[9] (Doc. 14 at 4-6 (citing SSR 96-9p, 1996 WL 374185, at *6).)

A. Dr. Parmley's and Dr. Walton's Prior Administrative Findings

As noted above, at step two, the ALJ found that Plaintiff suffers from the severe mental impairments of schizoaffective disorder, bipolar disorder, and substance abuse.[10] (AR 46.) Moreover, the record contains significantly probative evidence of these impairments and their limiting effects.[11] The record also contains opinion evidence about the impairments' limiting

[8] The SSA defines "extended periods" as "the approximately 2-hour segments between arrival and first break, lunch, second break, and departure." POMS DI § 25020.010(B)(2)(a). Thus, I use the concepts of extended periods and two-hour periods interchangeably in these Amended Proposed Findings and Recommended Disposition.

[9] In this regard, Defendant argues that the Court should not characterize opinion evidence as inconsistent with the ALJ's decision when they can be "readily harmonized," relying on the Eighth Circuit's decision in *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018), and the decisions of district courts in the Tenth Circuit that cite to *Chismarich*. (Doc. 14 at 5-6.) However, as discussed below, Defendant fails to persuasively explain how the ALJ's RFC assessment can be readily harmonized with Dr. Parmley's and Dr. Walton's findings. Also, none of the cases Defendant cites present factual issues materially similar to those presented here. Nevertheless, Defendant's argument does serve as a reminder that the Court's review of the ALJ's decision must be deferential.

[10] The state agency psychological consultants and the ALJ appear to have considered the limiting effects of Plaintiff's substance abuse disorder in assessing his mental RFC, because at the initial and reconsideration levels the agency found that a "drug addiction or alcoholism" ("DAA") determination was unnecessary, and the ALJ's decision makes no mention of a DAA analysis. (AR 41-58, 101, 112); *see* 20 C.F.R. § 416.935 (describing how SSA determines whether drug addiction or alcoholism is a contributing factor material to a determination of disability).

[11] The ALJ summarized this evidence in applying the paragraph B criteria of the PRT and again in assessing Plaintiff's RFC. (AR 48-49, 52-56.) Among other things, the ALJ noted some normal mental status examination findings but also abnormal findings including impaired memory, paranoia, daily auditory hallucinations with commands, rare visual hallucinations, anxious, depressed, dysthymic, or irritable mood with tearful affect, poor to fair judgment, and moderate aggression. (AR 48-49.) Plaintiff does not argue that the ALJ failed to consider or accurately summarize significantly probative evidence regarding his mental impairments, only that she failed to properly consider the opinion evidence she found persuasive. (*See generally* Docs. 11, 15.) However, I note that the ALJ did not discuss evidence in Plaintiff's medical records of: (1) a one-week voluntary in-patient stay at a psychiatric hospital beginning on November 30, 2021, for suicidal ideation, substance use, and psychosis, (AR 391-416); and, (2) a February 5, 2022,

effects, including the prior administrative findings of Dr. Parmley and Dr. Walton, who reviewed Plaintiff's medical records initially and on reconsideration, respectively.[12] (AR 95-97, 99-100, 106-08, 110-11.)

In alignment with steps two and three of the SEP, both Dr. Parmley and Dr. Walton first used the agency's PRT to conclude that Plaintiff has severe, medically determinable mental impairments that do not meet or medically equal a listing. (AR 95-97, 107-08.) Thus, they proceeded to complete Mental Residual Functional Capacity Assessments ("MRFCAs") of Plaintiff in alignment with step four of the SEP. (AR 99-100, 110-11.) The MRFCA form directs psychological consultants to first record "worksheet" findings about the limiting effects, if any, of the claimant's mental impairments on twenty work-related mental abilities within the four broad areas of mental functioning listed in the PRT.[13] (AR 99, 110.) Then, the form directs consultants to craft a "narrative" mental RFC describing how the evidence supports their conclusions. (*Id.*)

---

emergency department ("ED") visit for psychiatric symptoms, where Plaintiff exhibited "bizarre" behavior, including "moonwalk[ing]" out of the ED and sprinting away. (AR 417-26.)

[12] In addition, the record contains the report of Jessica Thai, M.D., who performed a consultative mental status examination of Plaintiff. (AR 1210-16.) The ALJ found Dr. Thai's opinions to be unpersuasive because they were vague, internally inconsistent, and inconsistent with Plaintiff's treatment records and reports of ongoing paranoia and hallucinations. (AR 56.)

[13] The MRFCA form's instructions state:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

(AR 99, 110.) I note that in the "explanatory text boxes" to which these instructions refer, Dr. Parmley merely wrote, "[s]ee PRT and below," and Dr. Walton wrote, "[s]ee below." (AR 99-100, 110-11.)

In the worksheet portion of her MRFCA, Dr. Parmley found that Plaintiff is limited in eighteen out of twenty work-related mental abilities across the four broad areas of mental functioning. (AR 99-100.) Specifically, she found that Plaintiff is limited:

(1)    In the area of understanding and memory: (a) markedly limited in the ability to understand and remember detailed instructions; and, (b) moderately limited in the ability to remember locations and work-like procedures;

(2)    In the area of sustained concentration and persistence: (a) markedly limited in the ability to carry out detailed instructions; and, moderately limited in the abilities to: (b) carry out very short and simple instructions; (c) maintain attention and concentration for extended periods; (d) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (e) work in coordination with or in proximity to others without being distracted by them; (f) make simple work-related decisions; and, (g) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

(3)    In the area of social interaction, moderately limited in the abilities to: (a) interact appropriately with the general public; (b) ask simple questions or request assistance; (c) accept instructions and respond appropriately to supervisors' criticism; (d) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, (e) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and,

(4)    In the area of adaptation, markedly limited in the abilities to: (a) travel in unfamiliar places or use public transportation; and, (b) set realistic goals or make plans independently of others; and, moderately limited in the abilities to: (c) respond appropriately to changes in the work setting; and, (d) be aware of normal hazards and take appropriate precautions.

(AR 99-100.)

For her narrative discussion, Dr. Parmley wrote "[s]ee PRT and below." (AR 100.) In applying the PRT, Dr. Parmley had summarized Plaintiff's psychiatric history, found that Plaintiff has "moderate" limitations in all four broad areas of mental functioning, and written "[s]ee MRFC." (AR 95-97.) And, in the "MRFC Additional Explanation" below her narrative discussion, Dr. Parmley wrote:

Clmnt w/ hx of meth and MJ use as well as AH, psychosis, anx. MER notes ED visit w/ psychosis and father reported that clmnt had used meth the day before. MSE CE is generally WNL, though clmnt reports AH. MMSE is 28/30 and MSE CEP assessed clmnt as having none/ mild limitations. However, this is not fully consistent w/ other objective MER. Whereas clmnt continues to report AH, the overall MER notes that clmnt's functional limitations are moderate. The totality of the MER suggests that when not abusing illicit substances, the clmnt is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a routine work setting. A workplace w/ well-defined expectations and limited interpersonal interactions is recommended.

(AR 100.)

In the worksheet portion of the MRFCA she completed on reconsideration, Dr. Walton found that Plaintiff is limited in thirteen out of twenty work-related mental abilities across the four broad areas of mental functioning. (AR 110-11.) Specifically, Dr. Walton found that Plaintiff is limited:

(1)     In the area of understanding and memory, markedly limited in the ability to understand and remember detailed instructions;

(2)     In the area of sustained concentration and persistence: (a) markedly limited in the ability to carry out detailed instructions; and, moderately limited in the abilities to: (b) maintain attention and concentration for extended periods; (c) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (d) sustain an ordinary routine without special supervision; (e) work in coordination with or in proximity to others without being distracted by them; and, (f) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

(3)     In the area of social interaction, moderately limited in the abilities to: (a) interact appropriately with the general public; (b) accept instructions and respond appropriately to supervisors' criticism; and, (c) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and,

(4)     In the area of adaptation, moderately limited in the abilities to: (a) respond appropriately to changes in the work setting; (b) travel in unfamiliar places or use public transportation; and, (c) set realistic goals or make plans independently of others.

(AR 110-11.)

For her narrative discussion, Dr. Walton wrote, "[s]ee below." (AR 111.) In the "MRFC Additional Explanation" below her narrative, Dr. Walton wrote, "[t]he initial summary and PRT/MRFC is affirmed as written. Claimant appears capable of SRTs with LPC." (AR 111.)

B. The ALJ's Consideration of Dr. Parmley's and Dr. Walton's Findings

In assessing Plaintiff's RFC, the ALJ

> found the assessment … by [Dr. Parmley and Dr. Walton] of moderate limitations in all areas of broad mental function with a limitation to simple tasks and limited contact to be persuasive. To that extent, the assessments were well supported by the medical evidence reviewed that showed abnormal findings on mental status examinations, including mood abnormalities, disturbed thought content with paranoia and hallucinations, reduced memory, reduced concentration and some normal findings in the same areas. To that extent, the assessments were also consistent with the longitudinal evidence that showed similar findings.

(AR 55 (citations omitted).) However, the ALJ found Plaintiff's social interaction limitations to be somewhat greater than those Dr. Parmley and Walton assessed, writing:

> although the consultants described the claimant's interaction limitations somewhat differently, both agreed with the need for limited contact. To that extent, the assessments were persuasive. Due to the findings of paranoia with some aggressive behavior and uncontrolled hallucinations in the medical evidence reviewed and the longitudinal evidence, the record suggests a need for reduction to occasional interaction with coworkers and supervisors in a setting with no public contact.

(AR 55 (citations omitted).)

C. Relevant Law

In some instances, an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). In *Vigil*, "the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems" that the ALJ had identified at step three "by limiting him to unskilled work" in assessing his RFC prior to step four. 805 F.3d at

11

1203-04. The *Vigil* court declined to reverse the ALJ's decision, reasoning that the restriction to unskilled work adequately accounted for the plaintiff's limitations because, per agency guidance, unskilled work requires the ability to maintain attention for two-hour segments but concentration is "not critical." *Id.* at 1204. The *Vigil* court recognized, however, that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.*

In *Smith*, the Tenth Circuit relied on *Vigil* to reject the plaintiff's argument that, in assessing her RFC, the ALJ had failed to adequately account for a psychological consultant's MRFCA findings of moderate mental limitations. 821 F.3d at 1268-69. The consultant in that case found that the plaintiff had nine moderate work-related mental limitations. *Id.* at 1268. The ALJ "did not repeat the moderate limitations" the consultant found but instead "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities," restricting her to "simple, repetitive, and routine tasks" and no "face-to-face contact with the public." *Id.* at 1269. The *Smith* court determined that "[t]his approach is acceptable" in the Tenth Circuit. *Id.*

Prior to *Vigil* and *Smith*, the Tenth Circuit had expressed doubt that the "vague catch-all term" of "simple work" would be "sufficient to capture … various functionally distinct mental limitations," including in the area of "[a]ttention and concentration." *Chapo v. Astrue*, 682 F.3d 1285, 1289-90 & n.3 (10th Cir. 2012). And the court had twice found that a limitation to simple, unskilled, or routine work was insufficient to account for assessed moderate limitations in the broad area of sustained concentration and persistence. *Jaramillo v. Colvin*, 576 F. App'x 870, 876–

77 (10th Cir. 2014); *Wiederholt v. Barnhart,* 121 F. App'x 833, 839 (10th Cir. 2005).[14] In *Evans v. Colvin*, 640 F. App'x 731 (10th Cir. 2016), the court harmonized *Vigil* with the principles applied in *Jaramillo*, *Wiederholt*, and other earlier cases and helpfully clarified that

> in general, limiting a claimant to unskilled work will not sufficiently convey the degree of a claimant's mental impairments …. But a restriction to unskilled work can account for a mental impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is obvious … or when an ALJ credits a medical-source opinion that a claimant's concentration deficit does not affect the ability to do unskilled work[.]

*Id.* at 738. In other words, courts must determine on a case-by-case basis whether an RFC restriction to a particular type of work adequately accounts for the specific work-related mental limitations the ALJ has accepted. *Victoria A. E. v. Bisignano*, Civ. No. 24-1237, 2026 WL 851404, at *9 (D.N.M. Mar. 27, 2026) (Sweazea, J.). Further, although the ALJ "can sometimes account for mental limitations by limiting the claimant to particular kinds of work … [u]nless the connection (between the limitation and the work) is obvious, … the [ALJ] must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion."[15] *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

Importantly, when a psychological consultant finds that a claimant's ability to perform a particular work-related mental function is "moderately limited" in the worksheet portion of her

---

[14] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

[15] Applying these principles has sometimes proved to be arduous. *See, e.g., Ortiz v. Kijakazi*, Civ. No. 21-1016, 2023 WL 2538834, at *9 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (noting "a lack of clarity" in the law regarding whether an RFC restriction to "simple, routine, and repetitive work" adequately accounts for "a moderate limitation in maintaining attention and concentration for extended periods"); *Saiz v. Kijakazi*, Civ. No. 21-681, 2022 WL 4235325, at *8-*10 (D.N.M. Sept. 14, 2022) (Sweazea, J.) (noting that "the question … whether a limitation to simple, routine tasks and simple work decisions with no fast-paced production work accommodates a moderate limitation in maintaining attention and concentration for extended periods … does not have an entirely straightforward answer"); *see also Garza v. Saul*, Civ. No. 19-699, 2020 WL 5518837, at *13 (D.N.M. Sept. 14, 2020) (Robbenhaar, J.) (finding that *Vigil* does not allow ALJs to merely "collapse" multiple mental limitations, including in the area of sustained concentration and pace, into an RFC restriction to "simple, routine, repetitive work, with 1, 2, or 3 step instructions, in an environment requiring few decisions").

13

MRFCA, she is opining that the claimant's ability to perform that function is "impaired."[16] *Ortiz v. Kijakazi*, Civ. No. 21-1016, 2023 WL 2538834, at \*7 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (citing POMS DI § 24510.063(B)(2)[17]); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all."). If a consultant determines that a claimant is moderately limited in his ability to perform a work-related mental function, she must describe the "degree and extent of the capacity or limitation" in her narrative discussion. *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (Vidmar, J.) (quoting POMS DI § 24510.063(B)(2)). "In other words, the [consultant] must incorporate all of [her worksheet] findings into [her] narrative RFC assessment," including her findings of moderate limitations. *Id.*

In considering a psychological consultant's prior administrative findings, an ALJ may rely exclusively on the consultant's narrative discussion in her MRFCA when the narrative is consistent with and adequately explains and accounts for the limitations she has found in the worksheet portion of the MRFCA form. *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447-48 (10th Cir. 2021); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *Kantor v. Kijakazi*, Civ. No. 21-717, 2023 WL 2538786, at \*5 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (citing cases). Conversely, "if a

---

[16] A consultant's finding of "moderately limited" in a MRFCA falls between a finding of "not significantly limited," on the one hand, and a finding of "markedly limited," on the other. POMS DI § 24510.063(B)(1)-(3). "Not significantly limited" means that "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity" while "markedly limited" means that "the individual cannot usefully perform or sustain the activity." *Id.* In contrast, when a consultant applies the PRT, she uses a "five-point rating scale," with the five points being no, mild, moderate, marked, and extreme limitation. 20 C.F.R. § 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(F)(2). According to this scale, "moderate limitation" means that a claimant's "functioning in [the] area [at issue] independently, appropriately, effectively, and on a sustained basis is fair" and falls between "[m]ild limitation," *i.e.*, the claimant's functioning in the area "is slightly limited," and "[m]arked limitation," *i.e.,* the claimant's functioning in the area "is seriously limited." *Id.* § 12.00(F)(2)(b)-(d). Here, Plaintiff challenges neither the ALJ's nor the psychological consultants' application of the PRT. (*See generally* Docs. 11, 15.) Thus, the meaning of "moderate limitation" under the PRT's five-point rating scale is not at issue.

[17] The SSA's Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999). The Court must "defer to the POMS provisions unless [it] determine[s] they are arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quotation marks omitted)

consultant's … narrative fails to describe the effect that each of the [worksheet] moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in [the worksheet portion], the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015); *see also Carrillo v. Saul*, Civ. No. 19-292, 2020 WL 6136160, at *10 (D.N.M. Oct. 19, 2020) (Sweazea, J.) (noting that an internally inconsistent opinion "cannot be substantial evidence that supports the ALJ's assessment of [the p]laintiff's RFC").[18]

D. Analysis

Here, both parties focus on whether the ALJ's inclusion of a restriction to "simple work" in her RFC assessment adequately accounts for Dr. Parmley's and Dr. Walton's prior administrative findings that Plaintiff is moderately limited in his ability to perform work-related mental functions in the broad area of sustained concentration and persistence, most particularly his ability to maintain attention and concentration for extended periods. (Doc. 11 at 1, 5-8; Doc. 14 at 4-6; Doc. 15 at 1-3; AR 50, 99, 110.) For the following reasons, I propose to find that, as Plaintiff argues, the ALJ erred in her assessment of Plaintiff's RFC because she accepted Dr. Parmley's and Dr. Walton's findings of sustained concentration and persistence limitations but failed to adequately account for them or explain her failure to do so.

As a preliminary matter, I note that the ALJ failed to resolve obvious inconsistencies between Dr. Parmley's and Dr. Walton's sustained concentration and persistence findings in concluding that both consultants' findings were persuasive. Specifically, Dr. Parmley found that Plaintiff is moderately limited in the abilities to "carry out very short and simple instructions" and

---

[18] *But see Rush v. Saul*, 389 F. Supp. 3d 957, 968-69 & n.7 (D.N.M. 2019) (Yarbrough, J.) (rejecting *Carver* and holding that ALJ was not required to either account for consultant's worksheet findings or explain why he failed to do so).

"make simple work-related decisions," while Dr. Walton found that Plaintiff is not significantly limited in these abilities. (AR 99, 110.) Conversely, Dr. Walton found that Plaintiff is moderately limited in the ability to "sustain an ordinary routine without special supervision," while Dr. Parmley found that Plaintiff is not significantly limited in that ability. (AR 99, 110.) The ALJ did not acknowledge these inconsistencies, much less explain which contradictory findings she accepted, which she rejected, and her reasons for doing so.[19] (AR 54-55.)

In addition, neither the psychological consultants nor the ALJ addressed apparent inconsistencies within each consultant's MRFCA findings regarding sustained concentration and persistence. For example, Dr. Parmley's narrative discussion, in which she concluded that Plaintiff can "carry out simple instructions," "attend and concentrate for two hours at a time," and "make simple decisions," appears directly at odds with her worksheet findings that Plaintiff is moderately limited – *i.e.*, impaired – in the abilities to "carry out very short and simple instructions," "maintain attention and concentration for extended periods," and "make simple work-related decisions."[20] (AR 99-100.) Likewise, Dr. Walton's findings appear to be internally inconsistent because in her narrative she adopted Dr. Parmley's conclusion that Plaintiff can attend and concentrate for two hours at a time, notwithstanding her worksheet finding that Plaintiff is impaired in this ability. (AR 110-11.) Yet nowhere in the consultants' findings or the ALJ's decision is there any attempt to reconcile or otherwise explain these apparent inconsistencies. (AR 54-55, 99-100, 110-11.)

---

[19] In light of the fact that the ALJ did address inconsistencies between Dr. Parmley's and Dr. Walton's findings about Plaintiff's social interaction limitations, it is curious that she failed to even acknowledge, much less resolve, the inconsistencies between Dr. Parmley's and Dr. Walton's findings about Plaintiff's sustained concentration and persistence limitations. (AR 55.)

[20] Dr. Parmley did qualify that Plaintiff could carry out simple instructions, make simple decisions, and attend and concentrate for two hours at a time "when not abusing illicit substances." (AR 100.) However, as noted in Section IV.A., above, the record includes no DAA analysis, and neither the consultants nor the ALJ otherwise purported to exclude the limiting effects of Plaintiff's substance abuse disorder in assessing his mental RFC. Moreover, the ALJ did not discuss or adopt Dr. Parmley's qualification in her RFC assessment. *See* 20 C.F.R. § 416.935.

16

The ALJ's failure to explain how she resolved the apparent contradictions in and between the two psychological consultants' findings led inexorably to the error Plaintiff challenges in his Motion. Specifically, having accepted multiple contradictory findings about Plaintiff's limitations in the area of sustained concentration and persistence, it would have been virtually impossible for the ALJ to account for all of these findings in the RFC she assessed. (*See* Doc. 11 at 5-7.) Instead, she appears to have "cherry-picked" the sustained concentration and persistence limitations in Dr. Parmley's MRFCA narrative without even acknowledging, much less explaining, her apparent rejection of contradictory limitations in Dr. Parmley's and Dr. Walton's MRFCA worksheets. (*Id.*) Among other things, she "neglected to include any limitations on Plaintiff's ability to attend and concentrate for two hours at time," even though both consultants found that Plaintiff is moderately limited – *i.e.*, impaired – in this ability. (*Id.*; AR 99, 110.)

In his response, Defendant maintains that the ALJ nevertheless adequately accounted for Dr. Parmley's and Dr. Walton's findings that Plaintiff is moderately limited in his abilities to sustain concentration and persistence, including his ability to attend and concentrate for extended periods. (Doc. 14 at 5-6.) In support, Defendant points to the fact that the ALJ, like Dr. Parmley and Dr. Walton, restricted Plaintiff to simple work in the mental RFC she assessed. (Doc. 14 at 5-6.) But Defendant's position is fatally flawed for two reasons.

First, many of Dr. Parmley's and Dr. Walton's MRFCA worksheet findings undermine the conclusion that Plaintiff can perform simple work. The worksheet portion of Dr. Parmley's MRFCA indicates that Plaintiff is moderately limited not only in the ability to maintain attention for extended periods, but also in the abilities to, among other things: carry out very short and simple instructions; maintain regular attendance and be punctual within customary tolerances; make simple work-related decisions; and, complete a normal workday and workweek without

17

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 99.) Similarly, the worksheet portion of Dr. Walton's findings indicates that Plaintiff is moderately limited not only in the ability to maintain attention for extended periods, but also in the abilities to, among other things: maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 110.)

These findings clearly undermine both the consultants' and the ALJ's conclusion that Plaintiff can perform simple work without additional accommodation for his sustained concentration and persistence limitations. Most obviously, if Plaintiff has an impaired ability to carry out very short and simple instructions and make simple work-related decisions, it follows that he has an impaired ability to perform simple work. In addition, like the ability to maintain attention for extended periods, the abilities to (a) carry out very short and simple instructions, (b) maintain regular attendance and be punctual within customary tolerances, (c) sustain an ordinary routine without special supervision, (d) make simple work-related decisions, and (e) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, are all mental abilities needed for any job, including unskilled work. *See* POMS DI § 25020.010(A)(3)(a), (B)(2)(a), (b), (B)(3)(c)-(f), (h)-(*i*).

Second, as noted in Section IV.C., an ALJ must explain how a work-related restriction accounts for a mental limitation reflected in a medical source opinion unless the connection between the mental limitation and the work-related restriction is obvious. *Parker*, 772 F. App'x at

616. Here, it is not obvious how a restriction to simple work would adequately account for the multiple sustained concentration and persistence limitations Dr. Parmley and Dr. Walton found, particularly when, as just discussed, many of the assessed limitations erode abilities needed for unskilled work. Yet the ALJ failed to explain how the restriction to simple work in her RFC assessment could adequately account for these limitations. (*See* AR 50-56.)

Of course, the narrative portion of Dr. Parmley's MRFCA, which Dr. Walton adopted, does indicate that Plaintiff can "carry out simple instructions, make simple decisions, [and] attend and concentrate for two hours at a time." (AR 100, 111.) And the ALJ appears to have relied on this narrative in assessing that Plaintiff can adequately sustain concentration and persistence in performing simple work. (AR 54-55.) However, as explained below, Dr. Parmley's narrative cannot constitute substantial evidence to support the ALJ's RFC assessment.

As noted in Section IV.C., if a psychological consultant's narrative fails to describe the effect of each limitation found in the worksheet portion of the MRFCA on the claimant's ability to work, or if it contradicts such limitations, then the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding. *Carver*, 600 F. App'x at 619. And here, as already discussed, Dr. Parmley's narrative appears to contradict limitations she and/or Dr. Walton found in the worksheet portions of their MRFCAs, *e.g.*, limitations in the abilities to carry out simple instructions, maintain attention for extended periods, and make simple work-related decisions. Additionally, Dr. Parmley's narrative does not appear to describe the effect of other limitations she and/or Dr. Walton found in their worksheets, *e.g.*, limitations in the abilities to maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an

19

unreasonable number and length of rest periods. Thus, absent further explanation, the ALJ could not properly rely on Dr. Parmley's narrative discussion to justify her RFC assessment that Plaintiff can sustain the concentration and persistence necessary to perform simple work.

I do note that, in her MRFCA narrative, Dr. Parmley not only limited Plaintiff to simple work, but also recommended "a workplace [with] well-defined expectations." (AR 100.) But even assuming this additional restriction could account for all of the moderate sustained concentration and persistence limitations that she and Dr. Walton found – a proposition that is neither obvious nor adequately explained in the consultants' findings or the ALJ's decision – the ALJ did not include this restriction in the RFC she assessed. (AR 50.) Without it, one is left with the ALJ's adoption of apparently contradictory findings about Plaintiff's ability to attend to and persist at simple work and her failure to adequately account for all of these findings in her RFC assessment or explain why she rejected them.

In sum, as Plaintiff argues, the ALJ found Dr. Parmley's and Dr. Walton's prior administrative findings persuasive, yet the RFC she assessed did not adequately account for all of the limitations they found in the area of sustained concentration and persistence, including a moderate limitation in Plaintiff's ability to attend and concentrate for extended periods. Nor did the ALJ adequately explain why she accounted for some limitations but not others. In particular, the ALJ's inclusion of a restriction to simple work in the assessed RFC did not adequately account for Plaintiff's moderate sustained concentration and persistence limitations, because: (a) the connection between the limitations Dr. Parmley and Dr. Walton found and the restriction to simple work is neither obvious nor adequately explained; (b) the restriction to simple work in Dr. Parmley's narrative appears to either contradict or fail to account for many of the findings in her and Dr. Walton's worksheets; and thus, (c) without further explanation, the ALJ could not properly

20

rely on Dr. Parmley's narrative conclusion that Plaintiff can maintain attention and concentration for extended periods in performing simple work.

When, as here, an ALJ fails to adequately account for all of the moderate limitations found by agency consultants in her RFC assessment or explain why she rejects them, the ALJ leaves the Court without a sufficient basis to determine that appropriate legal principles have been followed. *Lucero v. Saul*, Civ. No. 20-518, 2021 WL 2589130, at *14 (D.N.M. June 24, 2021) (Khalsa, J.); *Vienna v. Saul*, Civ. No. 18-783, 2019 WL 4686718, at *6 (D.N.M. Sept. 26, 2019) (Fashing, J.). In these circumstances, the case must be remanded so that the ALJ can supply adequate reasons for her decision. *Id.*

Although Defendant argues that remand is not required because any error the ALJ committed was harmless, I disagree. (Doc. 14 at 7-8.) The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

> [H]armless error analysis ... may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.* at 733-34 (quotation marks and ellipsis omitted). But courts "cannot attempt to supply a missing finding for the ALJ on legal or evidentiary matters that [she] did not consider because it risks violating the general rule against post hoc justification of administrative action." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (quotation marks omitted).

Here, if the ALJ had adequately considered and addressed all of Dr. Parmley's and Dr. Walton's prior administrative findings in her RFC assessment, she could reasonably have decided to account for the consultants' findings indicating that Plaintiff's abilities to sustain concentration and persistence in performing simple work, including his ability to maintain attention and

21

concentration for extended periods, are impaired. If she had done so, this would have resulted in a more restrictive RFC.

Then, a more restrictive RFC could have resulted in a finding of disability because, as Plaintiff argues, it may well be that "there is no competitive employment available" to an individual "with the totality of [the moderate] limitations" that Dr. Parmley and Dr. Walton found Plaintiff to have. (Doc. 11 at 9.) As Plaintiff points out, when the VE testified that a person with Plaintiff's characteristics and assigned RFC could perform the representative occupations of laundry classifier, housekeeper, and garment sorter, she was responding to a hypothetical question by the ALJ. (AR 88-89; Doc. 11 at 9.) But the ALJ's hypothetical question did not incorporate all of the sustained concentration and persistence limitations that Dr. Parmley and Dr. Walton found, including an impaired ability to attend and concentrate for two hours at a time and to perform simple work. (AR 88-89.) Moreover, when Plaintiff's counsel asked the VE about the employment prospects of an individual who "had difficulty maintaining attention or concentration for a two-hour period of time," the VE responded that this limitation "would eliminate competitive employment." (AR 90.) Thus, I cannot say that the ALJ's errors were harmless.

## V.  CONCLUSION

For all of the above reasons, I recommend that the Court GRANT Plaintiff's Motion (Doc. 11), REVERSE the Commissioner's decision denying Plaintiff's claim for SSI, and REMAND this matter to the Commissioner for further proceedings consistent with these Amended Proposed Findings and Recommended Disposition.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Amended Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**